# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

SHARON AUSTIN, *et al.*,

  Plaintiffs,

v.

BRIAN LAMB, *et al.*,

  Defendants.

Case No.: 1:25-cv-00016-MW-MJF

## DECLARATION OF DR. DANIEL A. SMITH

I, Dr. Daniel A. Smith, hereby declare and state as follows:

**A. Background**

1. My name is Daniel A. Smith, and I am over 18 years of age.

2. I have personal knowledge of the following facts and if called to testify could and would competently do so.

3. I am a Professor of Political Science at the University of Florida (UF). I served as Chair of the Department of Political Science for seven years, completing my term on August 15, 2024. I have spent over 20 years teaching within this Department and taught for nine years prior to coming to UF. In addition to this work, I am also President of ElectionSmith, which specializes in empirical research on voting and election administration in the American states.

1

4. I received my doctorate in Political Science from the University of Wisconsin-Madison in 1994, and B.A.s in Political Science and History from Penn State University in 1988.

5. For nearly 30 years, I have conducted research on electoral politics in the American states, focusing on the effect of political institutions on political behavior. I have testified before the U.S. Senate and state legislatures, on voting and election issues, and have served as an expert in election-related litigation in several states, including in Florida and before this court.

**B. Political Science Department at UF**

6. As Department Chair, I was responsible for overseeing departmental curricula for undergraduate and graduate students; liaising with faculty and staff to ensure that we fulfill the Department's mission to provide a supportive, high quality educational environment; managing the hiring of new faculty and staff; and approving travel-related funding requests, particularly for travel to academic conferences.

7. In the Spring of 2018, following the announcement of UF's "Faculty 500 Teacher/Scholar Initiative," our Department developed a new strategic hiring plan committed to recruiting a cluster of faculty who could teach courses focused on the intersection of race, ethnicity, gender, and categories of

identity across subfields in the discipline of Political Science. With backing and resources from the Dean of the College of Liberal Arts and Sciences, our Department prioritized hiring scholars broadly engaged in field-bridging research and pedagogy, adding to our Department's tradition of intellectual diversity and pluralism and to better reflect the interests of our diverse undergraduate and graduate student populations.

8. As a result of our cluster hiring, our Department now offers new courses to our students, including "Race, Law and the Constitution," "Race, Gender and Politics," "Feminist Political Thought," "Gender & Politics," "Citizenship and Migration," and "Racial Politics in Latin America." These and other courses taught by our "Faculty 500" colleagues have not only received excellent reviews from UF students from diverse backgrounds, but are also regularly fully enrolled.

**C. Impact of S.B. 266's General Education Core Course Requirements**

9. It is my understanding that Ron DeSantis signed Senate Bill 266 into law in May 2023. As far as I am aware, the Florida Board of Governors enacted regulations implementing S.B. 266's funding restrictions and general education course requirements earlier this year.

10. Students are required by Florida law to complete at least one general education core course in the disciplines of communication, mathematics, social sciences, humanities, and natural sciences. The goal of this requirement is to ensure that students receive a well-rounded education. The Political Science Department offers courses that can satisfy the social science discipline credit. However, students are not required to take these courses to fulfill their social science general education requirement. They could take a Sociology or Economics course instead, for example.

11. It is my understanding that S.B. 266 prohibits teaching "identity politics" in any general education courses. However, to my knowledge, "identity politics" is not defined anywhere in Florida law. It is unclear to me where the Legislature meant by this term, and it has confused members of my Department.

12. A broad understanding of "identity politics" could mean that faculty are unable to teach about group interests in politics. But this understanding of the term would make it difficult, if not impossible, to teach political science courses consistently with the standards of the discipline. Because the Board of Governors approved political science courses for inclusion in the list of general education core courses, I have to assume that the state defines

4

"identity politics" differently. But I am unaware of what they interpret it to mean.

13. When UF sent around a survey asking if the Department's general education courses teach "identity politics," I answered "No" based on my best guess at what the state meant and my understanding of how our faculty teaches. However, I am unsure if that is correct because I do not know what the state means by the term.

14. Because of the lack of clarity about what it means to teach "identity politics," our Department removed multiple courses that were listed as general education core courses in the past from the list. I did this because I did not want to risk the faculty who taught those courses being punished if they unintentionally violated S.B. 266. Because of the law's lack of clarity, I was unsure of how to advise them on how to comply with it. These are courses of the highest caliber. It is disappointing that due to the vague nature of S.B. 266's text, students will not get to take these courses for general education credit.

15. Dr. Sharon Austin is a member of the Department. I asked Dr. Austin if she wanted "The Politics of Race at UF" and "Black Horror and Social Justice" to remain on the list of general education courses. It was her preference that they remain on the list. I support her decision.

16. It is my understanding that S.B. 266 also prohibits general education courses from teaching "theories that systemic racism, sexism, oppression, and privilege are inherent in the institutions of the United States and were created to maintain social, political, and economic inequities." I find this restriction to be confounding and do not know what the Legislature is prohibiting.

17. Due to the confusing nature of S.B. 266's restrictions on general education core courses, I do not know if Dr. Austin's general education courses comply with the law. If they do not, I am unsure of how to advise her of how to bring them into compliance.

18. Sloppily written, confusing laws like S.B. 266 make it difficult for faculty to teach in accordance with the standards of our disciplines. These laws also make faculty fearful that they will be punished for unintentionally violating a provision. This leads to faculty avoiding topics that could even be arguably implicated—which deprives students of the opportunity to discuss and debate these ideas, impoverishing their educational experience.

19. With post-tenure reviews required every five years, faculty are justifiably worried that if they unintentionally violate Florida law, it could cost them their jobs. That fear is even greater for faculty who do not have tenure. This leads to faculty avoiding controversial issues, undermining free inquiry at UF.

**D. Impact of S.B. 266's Funding Restrictions**

20. One of the core responsibilities for faculty is to engage in research and generate scholarship. Faculty attend academic conferences to present their research and receive feedback from other experts in their field and related fields. This workshopping of ideas produces better scholarship. It is consistent with our professional standards and norms and expected of faculty at UF.

21. Recognizing the importance of faculty presenting at academic conferences, UF provides professional development funding to each tenured or tenure-track member of the Political Science Department. Faculty in the Political Science Department commonly use their professional development funds to pay for conference travel and fees. Prior to S.B. 266, these funds were widely available for faculty's use. UF did not restrict what conferences they could attend based on the views of the faculty or the conference's theme.

22. On March 30, 2024, Dr. Austin reached out to me to let me know that UF's International Center denied her funding to present her research at the annual Diversity Abroad Conference. It is my understanding that the International Center provided her a grant last year to attend and present her research.

23. Dr. Austin asked if she could use her departmental professional development funds to attend the Diversity Abroad conference. Unsure of whether S.B. 266 permitted this, I passed her request along to the Dean's Office.

24. Associate Dean Christopher McCarty called me on April 8 and told me that Dr. Austin should not use state funds to attend the Diversity Abroad conference. My understanding is that this was due to the ban on funding advocacy of diversity, equity, and inclusion in S.B. 266 and the Board of Governors' regulation. I sent an email relaying this denial to Dr. Austin that same day.

25. Prior to S.B. 266, I cannot recall UF denying a faculty member the opportunity to use their professional development funds to present their research at a conference because the conference or the faculty member's research favored diversity, equity, or inclusion or promoted social or political activism.

26. However, S.B. 266's funding provision does not only restrict faculty presentations at academic conferences. As faculty, we speak on our areas of expertise in a variety of other forums. These include panel discussions, guest lectures, invited speeches, debates, and other expressive activities. These events commonly happen at UF and other public universities in Florida.

27. Due to S.B. 266, faculty cannot be sure if they are complying with the law when speaking on issues related to diversity, equity, and inclusion or political or social activism. This forces faculty into the dilemma of risking punishment or curtailing their speech. When faculty curtail their speech, students, other

8

members of the university community, and the general public are denied our expertise on matters of public concern.

28. Research is another area where S.B. 266 and the Board of Governors' regulation create a lot of uncertainty. Faculty in the Political Science Department commonly use undergraduate and graduate student research assistants. My understanding is that is true in other disciplines as well. When faculty use student research assistants, they must now worry about whether their research could be seen as advocating for diversity, equity, and inclusion or promoting political or social activism. This threatens to chill vital research that is at the heart of the university mission.

29. S.B. 266 is a threat to academic freedom in Florida's public universities. It chills free inquiry and discussion in the classroom, in research, at university events, and at academic conferences. It undermines UF's mission and inhibits the truth-seeking and knowledge-generating functions of public universities.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Executed on 14 September 2024.

*[signature]*

_____
Dr. Daniel A. Smith