# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

SHARON AUSTIN,

Plaintiff,

v.

BRIAN LAMB, *et al.*,

Defendants.

Case No. 1:25-cv-00016-MW-MJF

## DECLARATION OF TAZARA WEILHAMMER

I, Tazara Weilhammer, hereby declare and state as follows:

### A. Background

1. My name is Tazara Weilhammer and I am over 18 years of age.

2. I have personal knowledge of the following facts and if called to testify could and would competently do so.

3. I am a third-year student at the Florida State University (FSU) College of Law and the incoming President of OUTLaw, a recognized student organization (RSO) at FSU that provides a platform for all students to learn about the legal issues facing gay, lesbian, bisexual, transgender and other queer people (LGBTQIA+).

1

4. OUTLaw sponsors events throughout the year to increase awareness of issues affecting LGBTQIA+ and to foster discussion of the current state of LGBTQIA+ law at the national, state and local levels.

5. As an RSO, OUTLaw receives critical funding for its programs and activities from FSU's Student Government Association (SGA), through FSU College of Law's Law School Council (LSC).

6. All purchases made by OUTLaw with LSC funds must be approved by LSC. In addition, OUTLaw pays for its programs and activities through processes that allow FSU to track how funds the RSO receives from LSC are being spent.

7. Like other RSOs, OUTLaw and its members and officers (both personally and organizationally) are required to abide by all Federal, State, and Local Laws, as well as all FSU Policies and Procedures, including but not limited to the Student Conduct Code and the Student Organization Conduct Code.

8. Under the Student Organization Conduct Code, RSOs are barred from using LSC funds to support "any activity prohibited by applicable law or University policy."

9. RSOs that violate applicable law or University policy risk losing access to SGA funds and losing their registration with FSU.

10. Violations of Federal and State laws, local ordinances, and Florida Board of Governors Regulation are also considered Violations of the Student Conduct Code.

11. Violations of the Student Conduct Code are punishable by various outcomes, including probation, suspension and expulsion.

**B. The Unclear Meaning and Scope of S.B. 266's Funding Ban**

12. Under S.B. 266, FSU may not "expend any state or federal funds to promote, support, or maintain any programs or campus activities that" violate Section 1000.05 of the Florida Statutes, "[a]dvocate for diversity, equity, and inclusion," or "promote or engage in political or social activism."

13. This prohibition does not apply to student fees allocated to support student-led organizations pursuant to written FSU policies and regulations. However, OUTLaw, its members and its officers are unable to determine whether the funds we receive through LSC are sourced solely from student fees.

14. OUTLaw, its members and its officers are also unable to ascertain what (if any) part of its programs or campus activities violate S.B. 266 and the Florida Board of Governors' Regulation that implements the law, Fla. BOG Reg. 9.016.

15. Under Fla. BOG Reg. 9.016, "any program or campus activities" is defined as "activities authorized or administered by the university or a university's

3

direct-support organization(s) that involve:" "[a]cademic programs subject to review as outlined in Sections 1001.706(5)(a) and 1007.25, Florida Statutes, other than classroom instruction;" "[s]tudent participation, other than classroom instruction;" and "[h]iring, recruiting, evaluating, promoting, disciplining, or terminating university employees or contractors."

16. OUTLaw, its members and its officers regularly participate in activities authorized by the university and may hire vendors and other contractors in connection with those activities.

17. Under Fla. BOG Reg. 9.016, "diversity, equity, and inclusion" is defined as "any program, campus activity, or policy that classifies individuals on the basis of race, color, sex, national origin, gender identity, or sexual orientation and promotes differential or preferential treatment of individuals on the basis of such classification."

18. Given that OUTLaw's programs and activities focus on providing a platform for students to learn about the legal issues facing LGBTQIA+, it is unclear whether or when our programs or activities could be deemed by the university to "classify" individuals on the basis of gender identity or sexual orientation, and to promote differential or preferential treatment of individuals on the basis of these classifications in violation of S.B. 266 and Fla. BOG Reg. 9.016.

19. Under Fla. BOG Reg. 9.016, "political or social activism" is defined as "any activity organized with a purpose of effecting or preventing change to a government policy, action, or function, or any activity intended to achieve a desired result related to social issues, where the university endorses or promotes a position in communications, advertisements, programs, or campus activities." "Social issues" is defined as "topics that polarize or divide society among political, ideological, moral, or religious beliefs."

20. Given that OUTLaw's activities focus on increasing awareness of issues affecting LGBTQIA+ and fostering discussion of the current state of LGBTQIA+ law at the national, state and local levels, it is unclear whether or when our activities could be deemed by the university to have a purpose of effecting or preventing change to a government policy, action, or function, or an intent to achieve a desired result related to "social issues." And, given that our activities are funded or authorized by the university, it is unclear whether the university could be deemed to be endorsing or promoting a position in violation of S.B. 266 and Fla. BOG Reg. 9.016.

## C. The Harmful Impact of S.B. 266

21. Due to the unclear meaning and scope of S.B. 266, OUTLaw, its members, and its officers fear being punished for using university funds in connection with activities that are consistent with our RSO's mission but that could be

5

found to violate S.B 266 and Fla. BOG Reg. 9.016. In particular, OUTLaw, its members, and its officers fear losing access to future university funds for OUTLaw's activities as well as punishment for violating the Student Conduct Code.

22. For example, it is unclear whether or to what extent we may rely on LSC funds to pay for membership, attendance or services at events organized by third parties for the benefit of LGBTQ+ students and legal professionals. These include events that are funded by other universities, such as the National LGBTQ+ Bar Association Lavender Law® Conference & Career Fair—the largest LGBTQ+ legal conference in the country. As a result, we have not sought university funding to attend these events since the passage of S.B. 266.

23. Participation in similar events is crucial for LGBTQ+ students to identity or meet LGBTQ+-friendly employers. Given how our opportunity to attend those events is limited in time each year, any decision by the university to deny funding for membership or attendance threatens irreparable harm in the form of lost employment and other networking opportunities for entire classes of LGBTQIA+ students every year.

24. It is also unclear whether or to what extent OUTLaw may continue to rely on LSC funds when paying for services or undertaking other activities for events

organized by our RSO, such as paying for food for volunteers or doing on-campus outreach in connection with gender identity clinics we have organized off-campus at LGBTQ+-friendly locations, such as gay bars.

25. Absent funding by the university, OUTLaw would not be able to afford or organize similar events to fulfill our mission as a student organization that focuses on LGBTQIA+ issues.

26. In addition, another RSO at FSU has become reluctant to participate in joint activities with OUTLaw, for fear that such activities could violate S.B. 266.

27. Given the above, S.B. 266 has introduced an unprecedented amount of uncertainty about OUTLaw's ability to fully exist and operate as an RSO. This uncertainty will only amplify the difficulties that LGBTQIA+ students face at FSU because of their sexual orientation or gender identity.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and accurate.

Executed on 1/24, 2025.

Tazara Weilhammer