IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHARON AUSTIN, et al.,

    *Plaintiffs,*

v.                                   **Case No.: 1:25cv16-MW/MJF**

BRIAN LAMB, et al.,

    *Defendants.*

_____/

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

This case involves another challenge to a collection of Florida laws that the Florida Legislature amended in 2023, which Plaintiffs refer to as "SB 266."[1] Plaintiffs are five professors who teach at three public universities in Florida—namely, Florida State University (FSU), University of Florida (UF), and Florida International University (FIU). Defendants include the members of each of the three universities' Boards of Trustees, in their official capacities, along with the members of the Board of Governors, in their official capacities. Plaintiffs seek a preliminary injunction enjoining Defendants' enforcement of SB 266's "funding restrictions,"[2]

---

[1] This Court previously addressed an earlier challenge to SB 266 in *NFC Freedom, Inc. v. Diaz*, 700 F. Supp. 3d 1057 (N.D. Fla. 2023). This Court ultimately denied preliminary injunctive relief in that case and the plaintiffs voluntarily dismissed their action.

[2] Section 1004.06(2)(b), Florida Statutes (2023) and Board of Governors Regulation 9.016(1)–(2) ("Prohibited Expenditures"), available at Regulation-9.016-Prohibited-Expenditures_-post-circulation_v6-FINAL.pdf (last visited Apr. 2, 2025).

which they assert are viewpoint discriminatory, overbroad, and unconstitutionally vague, and SB 266's general education requirements,[3] which they assert are unconstitutionally vague. This Court heard Plaintiffs' pending motion for preliminary injunction, ECF No. 22, at a hearing on March 31, 2025. For the reasons set out below, the motion is due to be denied.

Under Rule 65 of the Federal Rules of Civil Procedure, a district court may grant a preliminary injunction "only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam). "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (11th Cir. 1974)).

This Court begins with whether Plaintiff has shown a substantial likelihood of success on the merits. This Court addresses this factor first because, typically, if a plaintiff cannot "establish a likelihood of success on the merits," this Court "need

---

[3] Section 1007.25(3), Florida Statutes (2023).

not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). And because standing is always "an indispensable part of the plaintiff's case," this Court begins its merits analysis with standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Any evaluation of Plaintiffs' claims necessitates an inquiry into Plaintiffs' ability to bring such claims. Standing is not just some technical hurdle—it concerns a fundamental question about whether this Court has jurisdiction to hear Plaintiffs' constitutional claims. Nor is standing "dispensed in gross." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Instead, "plaintiffs must demonstrate standing for each claim that they press, against each defendant, and for each form of relief that they seek." *Id.* (internal quotation marks and citation omitted); *see also CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271–72 (11th Cir. 2006). Accordingly, this Court first considers whether Plaintiffs have met their affirmative burden to demonstrate a substantial likelihood of success in establishing standing against each Defendant as to each claim for which they seek preliminary injunctive relief.

"To meet the injury-in-fact requirement for purposes of seeking injunctive relief, a plaintiff 'must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *LaCroix v. Lee Cnty.*, 819 F. App'x

3

839, 841 (11th Cir. 2020) (citation and quotation marks omitted). And while "the injury requirement is most loosely applied—particularly in terms of how directly the injury must result from the challenged governmental action—where First Amendment rights are involved," *id*. at 841–42 (citation omitted), "the plaintiff must still demonstrate 'an unambiguous intention at a reasonably foreseeable time to engage in a course of conduct arguably affected with a constitutional interest.' " *Id*. at 842 (quoting *Bloedorn v. Grube*, 631 F.3d 1218, 1228 (11th Cir. 2011)). " '[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of 'actual or imminent' injury that our cases require.' " *Eland v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (quoting *Lujan*, 504 U.S. at 564).

The Eleventh Circuit has "found a sufficient imminence of future harm based on past injury," when the plaintiff "alleged *with particularity* that a future injury would likely occur in substantially the same manner as the previous injury." *LaCroix*, 819 F. App'x at 842 (emphasis added). However, when a plaintiff "failed to allege with particularity the location at which he would likely incur a future injury," the Eleventh Circuit has found standing lacking. *Id*. at 843 (citing *Eland*). For instance, when the facts give rise only to a "speculative inquiry of whether the plaintiffs would protest again and 'the unspecified details of where, at what type of event, with what number of people,' and under what conditions the protest would take place," the

4

Eleventh Circuit has found plaintiffs failed to establish an injury in fact. *Id*. (quoting *Eland*, 471 F.3d at 1206–07).

In short, the Eleventh Circuit has made plain that facts matter in challenges to laws arguably implicating First Amendment rights, even when the injury-in-fact requirement is "loosely applied." When plaintiffs seek preliminary injunctive relief in this context, they had better come armed with facts demonstrating a substantial likelihood that they face an imminent and cognizable injury. *See Eland*, 471 F.3d at 1207 ("The binding precedent in this circuit is clear that for an injury to suffice for prospective relief, it must be imminent." (citations omitted)). To do so, plaintiffs must point to facts demonstrating, *with particularity*, that they have an unambiguous intention at a reasonably foreseeable time to engage in a course of conduct arguably affected with a constitutional interest. Failure to point to specific facts demonstrating an imminent future harm, as in this case, precludes preliminary injunctive relief.

Moreover, at this stage, Plaintiffs cannot simply rely on factual allegations to meet their burden. Given the experience of counsel on both sides in this case, it should come as no surprise that when moving for a preliminary injunction and having been placed on notice that standing is at issue at the preliminary-injunction stage, plaintiffs must come forward with record evidence demonstrating a cognizable injury in fact that is traceable to the Defendants' conduct and redressable by an injunction against Defendants' enforcement of the challenged provision. *See Church*

*of Scientology Flag Serv. Org. v. City of Clearwater*, 777 F.2d 598, 608 (11th Cir. 1985) (affirming denial of preliminary injunction where plaintiff failed to come forward with any record evidence demonstrating entitlement to relief); *Cf. Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (suggesting it may be "unfair . . . to impose a standing burden beyond the sufficiency of the allegations of the pleadings on a plaintiff seeking a preliminary injunction, *unless the defendant puts the plaintiff on notice that standing is contested*") (emphasis added). But here, as explained in more detail below, even after Defendants placed Plaintiffs' standing at issue, Plaintiffs failed to come forward with evidence demonstrating that any Plaintiff faces an imminent threat of suffering a cognizable injury based on Defendants' threatened enforcement of any of the challenged provisions. *See City of South Miami v. Governor*, 65 F.4th 631, 639–40 (11th Cir. 2023) (holding that record demonstrated only speculative fears of future harm rather than "concrete evidence" that challenged law was "an imminent threat" to organizations' members or community that organizations served).

A

Starting with their claims challenging the funding restrictions, some of Plaintiffs' evidentiary submissions do not even attempt to demonstrate any injury as it pertains to the loss of funding or alleged chilled speech for fear of losing funding. For example, Plaintiff Goodman, the only Plaintiff suing the members of the FSU

6

Board of Trustees (BOT), makes no mention in her declaration of any harm suffered because of any Defendant's threatened enforcement of the funding restrictions. *See* ECF No. 23-5. As a result, no Plaintiff has established standing to seek a preliminary injunction against the FSU BOT Defendants with respect to the funding restrictions. And based on her silence with respect to the funding restrictions, Plaintiff Goodman has also failed to demonstrate standing to seek a preliminary injunction against the BOG Defendants with respect to the funding restrictions. Likewise, Plaintiff Queeley, a professor at FIU, says nary a word regarding the challenged funding restrictions in her declaration, *see* ECF No. 23-4, and thus also lacks standing to pursue a preliminary injunction against the BOG Defendants and the FIU BOT Defendants.

The remaining Plaintiffs assert fears concerning the denial of funding going forward. *See* ECF No. 23-1 ¶ 57 (Austin declaration) ("Because my research touches on issues related to DEI, I am concerned that I will be unable to obtain funding to attend conferences moving forward."); ECF No. 23-2 ¶ 46 (Marr declaration) ("Because much of my research is policy-focused and often includes a focus on racial equity as part of those policies, I am concerned that S.B. 266 will restrict my ability to apply for and receive funding for research in the future."); ECF No. 23-3 ¶ 29 (Rahier declaration) ("I am also concerned that FIU will deny me access to funding to assist in my research, to attend conferences, to present my scholarship,

and to hire students to assist me going forward."). But these Plaintiffs' subjective fears concerning some future denial of funding to attend conferences, support future research, present scholarship, or host guest speakers, absent any particulars concerning plans to apply for state or federal funding at some reasonably foreseeable time in the future is simply not enough at this stage to demonstrate an imminent injury in fact with respect to the challenged funding restrictions. Instead, this Court is left to speculate as to when Plaintiffs intend to apply for state or federal funding subject to the challenged funding restrictions, whether they are self-censoring in order to receive future funding, and how they plan to use such funds.

With respect to Plaintiff Marr, his declaration attests that his research is currently funded by a private source. *See* ECF No. 23-2 ¶ 42 ("I presently have a grant from a private, nonprofit organization for a two-year research project . . . ."). The fact that Plaintiff Marr's current research is privately funded only undercuts his asserted fear of losing future state or federal funding as he points to no facts setting out the particulars of his intentions to apply for state or federal funds in the future. The same is true with respect to his fear that he will either lose funding to pay his student research assistants or lose funding because he hires student research assistants. *Id*. ¶¶ 45–46. The fact that he has worked with student research assistants in the past (for projects funded by unknown sources) and is currently working with student research assists on his privately funded research tells this Court nothing

about his intentions to work with student research assistants on future research for which he plans to apply for state or federal funding. In short, Plaintiff Marr points to no facts demonstrating, with particularity, that he has an unambiguous intention to seek state or federal funding for his research at any reasonably foreseeable time in the future. Nor does Plaintiff Marr attest to any facts concerning self-censorship for fear of the funding restrictions being applied to him in the manner that he fears.

The same is true with respect to Plaintiff Rahier. His declaration attests to many past uses of state or federal funding to support his research and professional development, including participating in professional meetings and conferences and hiring students as research assistants. ECF No. 23-3 ¶¶ 25–27. But Plaintiff Rahier's declaration is devoid of any statement setting out the particulars regarding unambiguous intentions to seek state or federal funds for any of these activities going forward, whether he ordinarily applies for such funds on a yearly basis, etc. And this Court cannot speculate as to Plaintiff Rahier's plans to attend any meetings or conferences in the foreseeable future or what his current plans or future needs and intentions are with respect to hiring student research assistants. It is not this Court's place, nor its responsibility, to fill such gaps in the record.

As for Plaintiff Austin, her declaration demonstrates that she has already suffered a denial of state funding to attend conferences in 2024. ECF No. 23-1 ¶¶ 55–56. However, to obtain prospective relief, she must demonstrate an unambiguous

9

intention to seek funding to attend conferences at a reasonably foreseeable time in the future. *See LaCroix*, 819 F. App'x at 841–43. That she has not done. Although she attests to a fear of future denial of funding based on the current topic of her research, ECF No. 23-1 ¶ 57, she does not identify any future conference that she plans to attend in the reasonably foreseeable future for which she plans to apply for state or federal funding.

Plaintiff Austin also attests that she hired undergraduate students as research assistants to assist her with research that is funded through state and federal grants both during the fall semester of 2024 and for the current semester. *Id*. ¶¶ 59, 61. And although she plans to continue with her research, she fears that she may unintentionally violate SB 266, which could adversely affect her post-tenure review and result in losing her research grants. *Id*. ¶ 61. But Plaintiff Austin's fear of losing funding for her research as the result of working with student research assistants has no basis in the record. The funding restrictions under section 1004.06 took effect on July 1, 2023. These restrictions, and the BOG's implementing regulation 9.016—which was promulgated in January 2024—have been in effect for over a year, and Plaintiff Austin has pointed to no facts to demonstrate that any of the BOG Defendants or the UF BOT Defendants have acted in the manner consistent with her fears of losing funding for her research because she employs student research assistants. And as for her fears that her post-tenure review could later be adversely

affected if she is deemed to have violated SB 266's funding restrictions, these fears are wholly speculative at this juncture, as explained in more detail below with respect to Plaintiffs' standing to challenge the general education requirements.

In short, Plaintiffs have not met their burden to demonstrate a substantial likelihood of standing to seek preliminary injunctive relief with respect to the funding restrictions. Instead, Plaintiffs are either silent with respect to the funding restrictions or, in the event they have submitted evidence concerning the challenged provisions, their evidence does not demonstrate, with particularity, that they face an imminent injury that is traceable to any Defendant's enforcement of the funding restrictions against them.

## B

Next, this Court considers Plaintiffs' arguments to support standing to seek preliminary injunctive relief against enforcement of the general education requirements. Plaintiffs' motion and accompanying declarations originally framed Plaintiffs' injuries with respect to the loss of general education status for some of their courses as posing an existential threat to their academic departments and post-tenure review prospects. *See* ECF No. 23 at 32 ("Entire departments risk elimination from the decreased revenue their classes may generate after losing general education status due to arbitrary and discriminatory enforcement of S.B. 266."); *id*. at 9 ("Removal of these courses from the general education curriculum has caused and

will continue to cause irreparable harm to these professors, their departments, and their students by chilling faculty speech, threatening the financial health of professors and departments, and censoring students' educational opportunities.").

But in their reply, Plaintiffs pivot and argue that their primary injury is "chilled speech . . . in their classrooms." ECF No. 44 at 2. Plaintiffs contend that, given the allegedly vague standards applied to general education status, "Plaintiffs cannot conform their behavior with the law without either self-censoring in the classroom to regain or maintain general education course status or continuing to risk punishment, including impact on their post-tenure review and financial harm associated with the loss of their general education courses." *Id*. at 16. Accordingly, Plaintiffs' asserted injuries can be divided into three buckets—(1) self-censorship or chilled speech for fear of *losing* their general education course status, (2) self-censorship or chilled speech for fear that they will not be able to *regain* their general education course status, and (3) continuing to teach notwithstanding the risk of "punishment," such as financial harm resulting from the loss of general education status and negative impacts on their post-tenure review. But Plaintiffs' arguments with respect to their asserted injuries are unsupported by the record before this Court.[4]

_____

[4] Plaintiffs' arguments also present some thorny questions as to whether Plaintiffs' asserted speech injuries are objectively reasonable, whether the First Amendment is even implicated when the State decides which courses count towards the general education curriculum, and whether the

Here, without dispute, the general education requirements have already been enforced to strip Plaintiffs Goodman, Rahier, and Queeley of their courses' general education status beginning in the fall of 2025. ECF Nos. 23-3 ¶ 22 ("As a result, I am no longer permitted to teach 'Black Popular Cultures: Global Dimensions' or 'Myth, Ritual, and Mysticism' as general education courses at FIU."); ECF No. 23-4 ¶ 27 ("Because 'The Anthropology of Race and Ethnicity' and 'Black Popular Cultures: Global Dimensions' were removed from the UCC, as of Fall 2025, I will no longer be allowed to teach them as general education courses."); ECF No. 23-5 ¶ 25 ("Because the Board of Governors stripped 'Third World Cinema' of its general education designation, I am no longer permitted to teach it as a general education course.").

---

parties may be confusing standing with the merits of Plaintiffs' claim challenging the general education requirements. For example, while Plaintiffs' speech related to scholarship or teaching is protected by the First Amendment, the Board of Governor's curricular decisions regarding which courses qualify for general education course status arguably qualify as government speech. *See Pernell v. Fla. Bd. Of Govs. Of St. Univ. Sys.*, 641 F. Supp. 3d 1218, 1239–43 (N.D. Fla. 2022). Although the Plaintiffs may have a financial or professional interest in maintaining general education status for their courses, the Plaintiffs certainly do not have a First Amendment right, as a general matter, to force the State to designate their courses as part of the general education course curriculum. *See Leake v. Drinkard*, 14 F.4th 1242, 1247 (11th Cir. 2021) ("The First Amendment works as a shield to protect *private* persons from encroachments by the government on their right to speak freely, not as a sword to compel the government to speak for them." (internal citation and quotation marks omitted)). This begs the question of whether Plaintiffs are simply asserting a self-imposed injury where they claim chilled speech for fear of losing a status to which they have no right. Given that the Plaintiffs' evidence is largely silent with respect to any asserted chill and otherwise depends on remote or speculative harms, this Court need not address these thornier questions here.

But, contrary to Plaintiffs' legal arguments, none of these professors attest that they intend to seek to "regain" general education course status in the future or that they are self-censoring in their classrooms for fear of imperiling a future attempt to regain general education course status. It is also entirely unclear whether most Plaintiffs are currently teaching or are scheduled to teach the classes that were formally designated as general education courses during the 2025-2026 academic year, and thus, whether their classroom speech is even implicated such that they face an imminent injury of chilled speech or self-censorship. This is in stark contrast to the plaintiffs in the *Pernell* and *Novoa* cases, where professors attested in verified complaints[5] that they planned to teach specific courses in the upcoming academic year that were subject to the challenged law's direct prohibition on speech. *See, e.g.*, ECF No. 1 at 10 in Case No.: 4:22cv304-MW/MAF (Aug. 18, 2022) ("Dr. Austin will teach four courses in the 2022-23 school year . . . . Dr. Austin believes that the Stop W.O.K.E. Act will impact her ability to teach all of her courses in the upcoming academic year because they involve instruction and discussion of viewpoints disfavored by the legislature."); ECF No. 1 at 45 in Case No.: 4:22cv324-MW/MAF (Sep. 6, 2022) ("Professor Novoa has taught Science in Cultural Context at USF

---

[5] A verified complaint serves as the equivalent of an affidavit for purposes of summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing *Baker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981)). In the case now before me, Plaintiffs did not submit a verified complaint.

since 2020. She expects to teach the class during the Spring 2023 semester . . . . Due to the Stop WOKE Act, Professor Novoa must remove materials she assigned in previous iterations of the course and revise her lecture topics accordingly.").

For example, Professor Queeley attests that she most recently taught "The Anthropology of Race and Ethnicity" as a general education course in Fall 2020 and that she most recently taught "Black Popular Cultures: Global Dimensions" as a general education course in Summer 2023. ECF No. 23-4 ¶¶ 17, 19. Likewise, Plaintiff Goodman attests that she most recently taught "Third World Cinema" as a general education course in Fall 2022. ECF No. 23-5 ¶ 16. To the extent these Plaintiffs claim their classroom speech associated with courses for which they have no stated plans to teach at a reasonably foreseeable time in the future will be chilled, such a hypothetical future chill is both too remote and speculative to amount to a cognizable injury in fact.[6]

---

[6] Plaintiffs contend in their reply (without submitting a supplemental declaration for Plaintiff Queeley) that Plaintiff Queeley has, in fact, been permitted to teach one of her courses as a general education course during the second half of the spring semester this year. Nonetheless, Plaintiff Queeley still has not come forward with any evidence demonstrating that she is self-censoring in this course, or that her speech is otherwise chilled either for fear of losing general education status or for imperiling any plan to seek to regain general education status for any of her courses. Instead, her one and only declaration focuses entirely on speculating about the downstream effects that losing general education status for her courses may have on her enrollment numbers, the negative impact this may have on hiring teaching assistants to support professors teaching such courses, the loss of opportunities for students generally, the possible impact on a particular master's program, and FIU's ability to recruit and retain professors. *See* ECF No. 23-4 ¶¶ 27–34. Such speculative harms do not constitute a cognizable injury in fact sufficient for purposes of seeking extraordinary relief at this juncture.

As for Plaintiff Rahier, he attests that one of his courses that used to be designated as a general education course, "Myth, Ritual, and Mysticism," has historically been offered every semester to accommodate student demand. ECF No. 23-3 ¶ 18. According to Plaintiff Rahier, multiple professors teach multiple sections of this particular course, *id.*, and he "regularly teach[es]" this course, *id.* ¶ 20. Even if this Court can reasonably infer that Plaintiff Rahier is likely to teach "Myth, Ritual, and Mysticism" during the 2025-2026 school year, he does not assert that he has any plans or intentions to self-censor while teaching this course, nor whether he plans to seek to regain the general education course status for this particular course going forward. Instead, Plaintiff Rahier is apparently more concerned about the potential loss of funding and faculty positions for the African and African Diaspora Studies Program and the GSS Department, *id.* ¶¶ 23–24, which, based on this record, is only a hypothetical, future injury that is both speculative and remote. *See Georgia Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1202 (11th Cir. 2018).

Plaintiff Goodman also fears punishment for "inadvertently violating S.B. 266" while teaching non-general education courses going forward, even though the general education course requirements only apply to courses approved for general education course credit. *See* ECF No. 23-5 ¶¶ 27 ("To the extent that I am able to teach 'Third World Cinema' as a non-general education course, I am left guessing as to whether my course materials conform to Florida law.") and 28 ("My concerns

about inadvertently violating S.B. 266 also arise in my other courses."); *see also* §
1007.25(3), Fla. Stat. (setting out requirements for statewide general education core
courses); § 1007.55, Fla. Stat. (applying general education core course standards to
all general education courses). But Plaintiff Goodman's subjective fears of
punishment for "inadvertently violating S.B. 266" while teaching non-general
education courses are not objectively reasonable, given that the standards set out in
section 1007.25(3) do not apply to non-general education courses. In other words,
Plaintiff Goodman faces no "credible threat of prosecution" for "inadvertently
violating S.B. 266" while teaching non-general education courses. *See Pittman v.
Cole*, 267 F.3d 1269, 1284 (11th Cir. 2001).

As for Plaintiff Marr, there was some confusion at the hearing as to whether
his "Introduction to Sociology" course has retained its general education course
status. Plaintiffs' counsel argued that this course is still designated as a general
education course, and that Plaintiff Marr is self-censoring for fear of losing that
status or risk additional punishment. According to Plaintiff Marr's declaration, his
course was removed from the statewide general education core course list—which
he refers to as "Tier 1" courses at FIU. ECF No. 23-2 ¶¶ 19, 29. While his course
still satisfies university-mandated general education requirements as a "Tier 2"
course, it does not appear to be counted among statewide general education courses.
*Id*. ¶¶ 12, 29.

BOG Regulation 8.005 bears this out. This regulation sets forth the general education core courses that satisfy the requirements set out in section 1007.25(3)(c). *See* § 1007.25(3)(h), Fla. Stat. ("The general education core course options shall be adopted in rule by the State Board of Education and in regulation by the Board of Governors."). "Introduction to Sociology" is not listed among these courses. *See* BOG Reg. 8.005 ("General Education Course Options"), available at https://www.flbog.edu/wp-content/uploads/2024/01/Regulation_8.005_FINAL.pdf (last visited April 2, 2025). But section 1007.55(1)(a) now requires university-specific general education courses to meet the standards provided under section 1007.25(3).[7] Thus, to the extent Plaintiff Marr continues to teach "Introduction to Sociology," his course must conform with the challenged requirements. But that is not the end of the inquiry.

Plaintiff Marr attests that he faces an impossible choice to either self-censor or continue to teach "Introduction to Sociology" as he always has and risk losing its "Tier 2" status or other punishment like reporting or discipline. ECF No. 23-2 ¶ 37. However, Plaintiff Marr does not attest that he is currently teaching "Introduction to

---

[7] Of course, Plaintiffs fail to provide any sort of explanation, beyond generalizations, of how "Tier 1" courses, "Tier 2" courses, or "Quest" courses operate in conjunction with Florida law, particularly with respect to how these designations impact Plaintiffs' courses and how they relate to the provisions Plaintiffs attempt to challenge in this action. Instead, this Court was left to untangle the intricacies of Florida's higher-education curriculum requirements on its own. It has been several decades since the undersigned was a public university student, so a little explanation would have been helpful.

Sociology," nor that he is going to be teaching "Introduction to Sociology" in the reasonably foreseeable future such that his classroom speech will be imminently chilled. At most, he asserts that "Introduction to Sociology" is offered each semester and some combination of full-time faculty members, like Plaintiff Marr, and adjunct faculty teach various sections of the course. ECF No. 23-2 ¶ 14. But this Court cannot assume that this means Plaintiff Marr will teach "Introduction to Sociology" in the reasonably foreseeable future such that his classroom speech will be imminently chilled based on his fears of losing "Tier 2" status for this course.

Moreover, no Plaintiff has provided evidence to support Plaintiff Marr's speculative fear that he would be subject to some disciplinary proceeding if he somehow violated SB 266. *See* ECF No. 23-2 ¶ 37 ("I am concerned that if I continue to teach 'Introduction to Sociology' as I have in the past, students will report me and I will be subject to time consuming disciplinary procedures, which will distract from my research and scholarship."). As the parties have discussed at length, institutions—not individual professors—are statutorily on the hook for not complying with the general education requirements. *See* § 1007.55(5), Fla. Stat. ("Public postsecondary educational institutions that fail to comply with the requirements of this section are not eligible to receive performance-based funding pursuant to s. 1001.66 or s. 1001.92."). Unlike in *Pernell*, Plaintiffs have pointed to

no direct authority by which individual professors would be subject to disciplinary action in the event their classroom speech somehow violates section 1007.25(3)(c).

The closest Plaintiffs get is the suggestion that any violation of SB 266, however inadvertent, could be held against them during the post-tenure review process, because one of the review criteria is consideration of "[t]he faculty member's non-compliance with state law, Board of Governors' regulations, and university regulations and policies." *See* BOG Reg. 10.003(3)(a)3., available at https://www.flbog.edu/wpcontent/uploads/2023/11/Regulation_10.003_November-2023_FINAL.pdf (last visited Apr. 2, 2025).  But Plaintiffs point to no evidence that demonstrates that the Boards of Trustees have so construed this criterion in the manner they fear or that permits the reasonable inference that the Boards of Trustees will construe professors' in-class speech during an approved general education course to amount to a violation of state law. Instead, Plaintiffs ask this Court to speculate that this is how the Boards of Trustees will interpret and apply the law when it comes time for their post-tenure review. This, again, is not enough to demonstrate an objectively reasonable chill. *See NFC Freedom, Inc.*, 700 F. Supp. 3d at 1069 ("Again, Plaintiffs point to no evidence demonstrating whether the Board of Trustees or the President of New College will construe the statute to provide a sufficient basis to punish an individual professor's speech associated with scholarship or teaching.").

Finally, Plaintiff Austin attests that she has lost general education status for two of her courses for the 2025-2026 academic year. ECF No. 23-1 ¶ 36. However, Plaintiff Austin plans to teach one of these courses as a general education course during the summer 2025 semester, before the loss of general education status takes effect. *Id*. ¶ 37. She does not assert that she plans to teach either course during the 2025-2026 academic year nor that she intends to try to regain general education status going forward. Instead, she attests to fears of losing credibility, income, and, ultimately, tenure if she either inadvertently violates SB 266 or if her courses lose general education status. *Id*. ¶¶ 41, 43, 45–46. To the extent Plaintiff Austin's speech will be chilled while teaching her general education course this summer because she fears direct punishment, including loss of tenure, if she "unintentionally violate[s] S.B. 266," this speculative fear is not objectively reasonable for the reasons just discussed above.[8] *Cf. Pernell*, 641 F. Supp. 3d at 1255 (describing regulatory framework that required universities to implement process for investigating reported violations taking action against individual professors who violated state law).

---

[8] In response to Defendants' arguments concerning Plaintiff Austin's asserted "stigma" injury and the hypothetical loss of supplemental income or merit-based compensation, *see, e.g.*, ECF No. 39 at 15–16, Plaintiffs apparently disclaim reliance on such injuries to support standing and instead focus on chilled speech. But, as noted above, based on the record before this Court, Plaintiff Austin's asserted chill is either purely conjectural (to the extent Plaintiff Austin contends she may be chilled someday when she teaches former-general education courses after this summer), or speculative and not objectively reasonable (to the extent she fears some form of punishment for unintentionally violating SB 266 while teaching her general education course this summer).

Accordingly, Plaintiffs have not met their burden to demonstrate a substantial likelihood of standing to seek preliminary injunctive relief with respect to the general education requirements. Plaintiffs' evidence does not demonstrate that any Plaintiff faces an imminent injury—namely, chilled speech—that is traceable to any Defendant's enforcement of the general education requirements. For what it's worth, Plaintiffs' existential concerns about the survival of their academic departments and the future viability of their areas of expertise in the state of Florida are certainly understandable. However, these concerns, as described at length in Plaintiffs' declarations, do not give rise to a concrete, imminent, and non-speculative injury in fact sufficient to permit Plaintiffs to seek a preliminary injunction against Defendants' enforcement of the general education requirements.

*    *    *

Because Plaintiffs have not met their burden to show that at least one of them has an injury in fact sufficient to confer Article III standing to seek preliminary injunctive relief with respect to either the funding restrictions or the general education requirements, their motion for preliminary injunction, ECF No. 22, is **DENIED**.

**SO ORDERED on April 2, 2025.**

s/Mark E. Walker_____
**Chief United States District Judge**