**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

SHARON AUSTIN,

    *Plaintiff*,

v.

BRIAN LAMB, et al.,

    *Defendants*.

Case No.: 1:25-cv-00016-MW-MJF

**MOTION TO STAY PROCEEDINGS PENDING APPEAL, OR IN THE
ALTERNATIVE, TO STAY THE DISCOVERY ORDERS ENTERED AT
ECF NOS. 130 AND 133**

Defendants members of the Florida Board of Governors of the State

University System (the "BOG") and third-party movant the Honorable Rachel

Kamoutsas ("Judge Kamoutsas") (collectively, the "Movants"), pursuant to

Federal Rule of Appellate Procedure 8(a), respectfully move for a global stay of

these proceedings pending their appeals of the discovery orders docketed at ECF

Nos. 130 and 133 (collectively, the "Orders"). Or, in the alternative, Movants

respectfully ask this Court to stay the Orders and Judge Kamoutsas's deposition

pending the appeals. In support, they submit this incorporated memorandum of

law under Local Rule 7.1(E).

**BACKGROUND**

The Court is familiar with the facts of this case, so only a brief recitation

of the relevant background follows. Plaintiff Sharon Austin ("Dr. Austin")

challenges the constitutionality of Senate Bill 266 ("SB 266")—codified in

1

relevant part at section 1004.06, Florida Statutes.[1] *See* ECF No. 49. The BOG is responsible for implementing SB 266 by "adopt[ing] rules and regulations." Fla. Stat. § 1004.06(4). Acting in a legislative capacity, the BOG promulgated Regulation 9.016.[2] Dr. Austin believes that SB 266 and Regulation 9.016 violate her First Amendment rights and has brought claims against the BOG under 42 U.S.C. § 1983. *See* ECF No. 49. She has pursued those claims in part by mounting an expansive discovery campaign targeting the legislative processes that produced both SB 266 and Regulation 9.016.

On May 20, 2026, in response to a flurry of discovery requests probing the BOG's motivations, deliberations, and drafting processes for enacting SB 266 and promulgating Regulation 9.016, the BOG moved for a protective order. ECF No. 113. It argued that the discovery Dr. Austin seeks constitutes legislative activity protected by the legislative privilege. *See generally id.*

On June 10, 2026, with BOG's motion for protective order pending, Dr. Austin subpoenaed a third party—Judge Kamoutsas—to examine her knowledge of "SB 266 and BOG Regulation 9.016['s] implementation and enforcement." ECF No. 127-1 at 1. Judge Kamoutsas currently serves on the Florida Sixth District Court of Appeal and previously served in high-level roles for the BOG,

---

[1] Section 1004.06(2) restricts Florida's public universities from using state and federal funds for certain programs or campus activities. Fla. Stat. § 1004.06(2)(b).
[2] Regulation 9.016 is a statewide policy governing permissible expenditures at all public universities.

participating in Regulation 9.016's drafting and implementation—quintessentially legislative acts. ECF No. 127-2 ¶¶ 3–4.

On June 12, 2026, Judge Kamoutsas moved to quash Dr. Austin's subpoena arguing that the legislative privilege bars her deposition and incorporating the arguments raised in the BOG's motion for protective order. ECF No. 127.

On June 17, 2026, the Court granted in part and denied in part the BOG's motion for a protective order, permitting discovery into post-enactment "enforcement" of SB 266 and Regulation 9.016 while protecting the BOG's pre-enactment legislative deliberations. *See* ECF No. 130 (the "MPO Order").

On June 22, 2026, the Court denied Judge Kamoutsas's motion to quash her deposition subpoena, permitting her deposition to proceed but limiting Dr. Austin's inquiry to post-enactment enforcement actions (the "MTQ Order"). ECF No. 133 at 1 (explaining Judge Kamoutsas's "post-enactment enforcement actions in her role as the Board of Governors's former Chief of Staff . . . is not barred by the legislative privilege that prevents discovery into Judge Kamoutsas's pre-enactment motivations concerning the drafting of BOG Regulation 9.016" (citing ECF No. 131 at 3–7)).

On June 24, 2026, the Court also issued an order reiterating the BOG's duty to make productions consistent with the post-enactment framework the Court established in its earlier orders. ECF No. 135 at 6.

On July 2, 2026, the BOG appealed the MPO Order. *See generally* ECF No. 137. That same day, Judge Kamoutsas appealed both Orders, ECF Nos. 130 and 133, to the Eleventh Circuit. *See generally* ECF No. 138.

## THE LAW

A district court may stay an order pending appeal, Fed. R. App. P. 8(a)(1)(A), and has inherent authority to stay proceedings in the interest of judicial economy and fairness to the parties, *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *see also James v. Hunt*, 761 F. App'x 975, 981 (11th Cir. 2018); *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, No. 3:23CV10385-TKW-ZCB, 2025 WL 287457, at *2 (N.D. Fla. Jan. 13, 2025). To determine whether it should do so, the court balances four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 425–26 (2009)). The four-factor standard is not, however, rigidly applied in every case. *See id.* Where the balance of equities tips decisively in the movant's favor, the first factor's requirement of a strong likelihood of success on the merits is relaxed. *See id.*

## ARGUMENT

The BOG's and Judge Kamoutsas's appeals will require the Eleventh Circuit to decide whether the Orders' pre/post-enactment framework for

adjudicating the legislative privilege is correct and whether that legislative privilege, among other things, shields Judge Kamoutsas and the BOG's corporate representative from having to sit for a deposition notwithstanding Dr. Austin's concession of seeking that discovery for an improper purpose.

But for those appeals to mean anything, these proceedings must be stayed. Once the BOG's members produce witnesses and once Judge Kamoutsas is forced to sit for a deposition and reveal privileged information, the harm cannot be undone—the legislative privilege would have lost its force, and the appeal would be deprived of any practical effect.

Moreover, the Orders are inextricably linked to each other, as they rely on the same underlying legislative-privilege reasoning. *See generally* ECF Nos. 130, 133, and 135. So, if the Orders' pre/post-enactment framework does not hold on appeal, then allowing this case to proceed while the appeals are pending risks more than a single improper deposition—it will allow the wholesale invasion of the legislative privilege across every available discovery channel before the Eleventh Circuit has an opportunity to weigh in.

## I.    Movants are likely to succeed on the merits.

Respectfully, Movants are likely to succeed on appeal for at least two reasons: *First*, the Court created a test that is incompatible with the Eleventh Circuit's precedent. *See* ECF No. 130 at 3; ECF No. 133 at 1–2. *Second*, the Court misapplied its test in adjudicating Judge Kamoutsas's motion. *See* ECF No. 133 at 2–3. Indeed, it departed from Eleventh Circuit precedent in deciding the BOG's

motion for protective order as well, *see generally* ECF No. 130 at 3, and again applied this reasoning in its order on Dr. Austin's motion to compel, *see* ECF No. 135 at 5–6.

Though even if the Court takes a different view about the merits of Movants' appeals, their showings on the remaining three factors, argued *infra*, counsel in favor of a stay wholly apart from the merits. *Ruiz v. Estelle*, 650 F.2d 555, 565–66 (5th Cir. 1981).[3] Where, as here, the balance of hardships and public interest cut strongly in favor of a stay, it is sufficient for a movant to demonstrate a "*substantial case* on the merits"—even if outright success is not a mathematical probability. *Id*. at 565 (emphasis added) (holding "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay"); *see also League of Women Voters*, 32 F.4th at 1370 (explaining "'when the balance of equities ... weighs heavily in favor of granting the stay'—we relax the likely-to-succeed-on-the-merits requirement" (quoting *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986))). In other words, the Court does not need to wade back into its merits ruling to find that the Orders should be stayed because the factors on balance decisively favor preserving the status quo pending review.

---

[3] The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

*See, e.g.*, *Pernell v. Lamb*, No. 4:22CV304-MW/MAF, 2023 WL 3911863, at \*2 (N.D. Fla. Mar. 1, 2023).

Movants respectfully believe they are likely to succeed on the merits of their appeals, or, at the least, they present substantial cases. We expand in turn.

**A.  A legislative privilege framework that focuses on pre/post-enactment chronology—rather than purpose—lacks Eleventh Circuit support.**

Summarily put, the Court ruled that the legislative privilege shields *pre*-enactment conduct but not anything involving *post*-enactment "enforcement." ECF No. 133 at 2–3; ECF No. 130 at 4–12. The Court, on that basis, thus refused to quash Dr. Austin's subpoena. *Id*. That said, this pre-versus-post-enactment distinction operates under a framework that the Eleventh Circuit has never endorsed. To the contrary, it undermines the test the Eleventh Circuit set out in *Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339 (11th Cir. 2023), given it focuses on *when* the to-be-discovered facts may have occurred rather than *what* the purpose behind that discovery may be. But focusing on *chronology*, rather than *purpose*, cuts right against the governing precedent. *See id.* at 1343 ("[W]e consider the *purpose* of a subpoena, *not what the subpoena seeks*, to determine if the legislative privilege applies." (emphases added)).

The Eleventh Circuit is clear: "courts need not decide whether a document befits some descriptor, like 'purely factual,' to determine whether it is protected. If the document is sought for ***an*** impermissible purpose, ***the inquiry is over***." *Id.* (emphases added). And here the Court has already found that at least some aspects

of the subpoena and Dr. Austin's companion discovery into BOG's legislative functions *are* motivated by an impermissible purpose. *See* ECF No. 133 at 1 ("prevent[ing] discovery into Judge Kamoutsas's pre-enactment motivations concerning the drafting of" the regulation); ECF No. 130 at 10–12 (shielding every request into the "pre-enactment drafting, motivations, and interpretations" of SB 266 and Regulation 9.016). That alone should have been dispositive. Particularly because the legislative privilege is "unqualified" as to inquiries into legislative motive—meaning, once a court determines the discovery was indeed motivated by an impermissible purpose, then "the inquiry [should have been] over." *Pernell*, 84 F.4th at 1343; *see also Milligan v. Allen*, No. 2:21-CV-01530-AMM, 2024 WL 3666369, at *5 (N.D. Ala. July 12, 2024) (quashing subpoena containing "sweeping" language "inquir[ing] into legislative acts or the motivation behind such acts, which is ***an*** impermissible purpose" (cleaned up & emphasis added)).

Here though—even after recognizing the subpoena's improper purpose— the Court let the deposition proceed anyway because "the subpoena's purpose is *not solely* to inquire into the motivation behind SB 266 or BOG Regulation 9.016." ECF No. 133 at 1 (emphasis added). That conclusion relied on *In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015)'s observation that "[t]he subpoenas' only purpose was to support the lawsuit's inquiry into the motivation behind [a law]." ECF No. 133 at 1–2 (quoting *Hubbard*, 803 F.3d at 1310). Respectfully, contrary to the Court's interpretation, *Hubbard* does not make

being the "sole purpose" a precondition to quashing the subpoena. In fact, as *Pernell* makes clear, it's the opposite. *See Pernell*, 84 F.4th at 1343.

In *Hubbard*, the single purpose was a *feature* of its record—not a *holding* imposing a condition that all privilege-holders must meet. By the time the Eleventh Circuit ruled in *Hubbard*, only one claim remained, and the "factual heart" of that remaining claim was the legislators' motive—so motive was the only thing the subpoenas *could* seek. *Hubbard*, 803 F.3d at 1310–11. To ease any doubt that *Hubbard* did not create a categorical "sole purpose" rule, look no further than *Pernell*'s holding that if the subpoena "is sought for ***an*** impermissible purpose, the inquiry is over." *Pernell*, 84 F.4th at 1343 (emphasis added). "***An***" impermissible purpose is different from a "***sole***" impermissible purpose.

And that difference matters. A "sole purpose" rule would otherwise leave the legislative privilege a dead letter. The privilege would survive only in the unusual case where legislative motive was the subpoena's only conceivable purpose—the second a plaintiff devised some pretextual secondary purpose, the privilege would disappear. Take this example: a party could concede that the subpoena is 99% designed to probe a legislatively privileged matter yet overcome the privilege simply by tacking on *any conceivable purpose* for that remaining 1%. That cannot be the rule.

By Dr. Austin's own words, her purpose is—and has always been—plain: She wants to ask a witness who helped write the regulation—an official "personally and uniquely involved in the key events," with "unique . . . testimony

in her personal knowledge," ECF No. 131 at 3, 10—about "the drafting . . . of Regulation 9.016" and the "purposes considered by . . . the Florida Legislature," ECF No. 116 at 5, 17. Those improper motives are underscored by her counsel's admission that certain deposition topics "could potentially encompass information that may be covered by the legislative privilege." Ex. B to MPO [ECF No. 113-2] at 7. These explicit, admitted-to motives for subpoenaing Judge Kamoutsas make clear that the subpoena's *purpose* is to cast about for information protected by the legislative privilege. Conveniently re-packaging her motives as being about "post-enactment" "enforcement"[4] or any other new (pretextual) label to justify deposing Judge Kamoutsas does not make what Dr. Austin seeks any less privileged. *See Hubbard*, 803 F.3d at 1311 (holding that "[a]ny material, documents, or information that did not go to legislative motive was irrelevant . . . while any that did go to legislative motive was covered by the legislative privilege," regardless of how the inquiry was framed).

**B. Even under the pre/post-enactment test, there is no relevant post-enactment enforcement because SB 266 does not charge the BOG with enforcing section 1004.06, Fla. Stat.**

This Court allowed the deposition only as to the BOG's "post-enactment enforcement" of Regulation 9.016. ECF No. 133 at 2–3. Yet section 1004.06, Florida Statutes—the statute Regulation 9.016 is meant to implement—does *not* saddle the BOG with any enforcement obligations. More specifically, this means

---

[4] *See infra* section II.B.

the BOG was given *no* "post-enactment enforcement" mandate. This is significant.

The absence of an enforcement mandate in section 1004.06 harshly contrasts against the Legislature's *specific* enforcement mandates in other statutes. *Compare* Fla. Stat. § 1004.06 (containing no enforcement mandate), *with* Fla. Stat. § 1001.706(3)(g) (the BOG "shall adopt . . . appropriate penalties for violations of such policy, and a program for enforcing such policy"), *and* Fla. Stat. § 1001.706(7)(d) (the BOG "shall ensure compliance with the provisions of s. 287.09451").

That section 1004.06 does not reflect the Legislature's intent to confer post-enactment enforcement duties on the BOG is the very fruit of the BOG's oversight framework: "The Board of Governors of the State University System shall *oversee the performance of* state university boards of trustees in the enforcement of laws, rules, and regulations. State university boards of trustees *shall be primarily responsible for compliance with laws* and Board of Governors' rules and regulations." Fla. Stat. § 1008.322(1) (emphases added). Put differently, where, as here, the Legislature has not changed the default oversight framework of section 1008.322(1), by charging the BOG with specific enforcement authority, the BOG is acting in its legislative capacity in the implementation of Regulation 9.016 and is not otherwise overlaid with "post-enactment enforcement" mandates. *See Link v. Diaz*, 669 F. Supp. 3d 1192, 1198 (N.D. Fla. 2023) ("Together, these provisions address either the Defendants' 'general

11

enforcement authority' with respect to their constituent *institutions* (not individual professors or students) or Defendants' own responsibility to comply with state and federal law. Indeed, Plaintiffs point to no law or rule that specifically ties any general supervisory or enforcement authority over the institutions within the Boards' jurisdiction to enforcement of the recording provision against individuals in this case. This is simply not sufficient to establish traceability for standing purposes.").

Regulation 9.016, for its part, places the compliance obligation on "[a] state university or state university direct-support organization," BOG Reg. 9.016(2), without mandating that the universities themselves implement any specific regulation or policy against Dr. Austin or any other faculty member. *See also* Fla. Stat. § 1004.06 (similar). Here, the BOG's role was to set policy and oversee university-level compliance with its policies and Florida law—a function that, while quintessentially supervisory and systematic, is materially distinct from "post-enactment enforcement."

The carve-out for inquiries into the BOG's and Judge Kamoutsas's "post-enactment enforcement" knowledge, therefore, rests on an incorrect premise: that the BOG is charged with enforcement to begin with. But neither section 1004.06, Florida Statutes, nor Regulation 9.016 charges the BOG with university-level funding decisions or the authority to discipline Dr. Austin or her peers for non-compliance with those laws. And nothing in the text of section 1004.06 or Regulation 9.016 supports the alternative. So, the *only* reason Dr. Austin could

have for deposing Judge Kamoutsas *is* to get at information that gets at the heart of the privilege: the motives, deliberations, interests, and purposes of passing the law and regulation. Dr. Austin admitted as much herself. *Supra*, at 10. The subpoena should have been quashed in full because, by pointing to "enforcement," Dr. Austin wouldn't merely be contradicting what she has already admitted as being the reason for this deposition—it would by definition serve as no more than a pretext because the statute she challenges does not place enforcement authority on the BOG in the first place. *See Florida v. Byrd*, 674 F. Supp. 3d 1097, 1106–07 (N.D. Fla. 2023) (quashing a general counsel's deposition where plaintiffs "identified no topic of inquiry that would plausibly discover any nonprivileged testimony").[5]

* * *

For these reasons, Movants are likely to succeed on the merits of their appeals. At the very least, whether the legislative privilege provides any of the protections that were denied in ECF Nos. 130 and 133 is a serious, substantial question the Eleventh Circuit should resolve.

---

[5] The MTQ Order states that Dr. Austin "has thoroughly articulated a relevant line of inquiry with respect to Judge Kamoutsas's deposition regarding her post-enactment enforcement actions in her role as the Board of Governors's former Chief of Staff." ECF No. 133 at 1 (citing ECF No. 131 at 3–7). Movants respectfully disagree; the deposition seeks testimony that is not relevant under Rule 26(b)(1) to Dr. Austin's claim and therefore imposes an undue burden under Rule 45(d)(3)(A)(iv). *See Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1340 (11th Cir. 2020) (affirming an order quashing a subpoena where the requested information's relevance was "marginal to non-existent" and compliance would unduly burden a nonparty state agency).

## II.    Absent a stay, Movants will suffer irreparable harm.

Without a global stay, both Movants will suffer irreparable harm. Judge Kamoutsas will suffer the very harm that the legislative privilege protects. And the BOG will be forced to continue participating in ongoing discovery guided by a privilege framework that the Eleventh Circuit may ultimately reject, and one that perpetuates ongoing, unresolved objections.

Starting with Judge Kamoutsas who, if forced to sit for her deposition, will be irreparably harmed twice over. *First*, the legislative privilege promised to shield Judge Kamoutsas from the burden of litigation—including "discovery requests." *Pernell*, 84 F.4th at 1343; *see also League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 453 (N.D. Fla. 2021) (explaining how the legislative privilege "prevent[s] parties from using third-party discovery as an end-run around legislative immunity—harassing legislators through burdensome discovery requests"). That promise is broken the moment Judge Kamoutsas is compelled to be deposed. Even if Judge Kamoutsas's privilege is vindicated on appeal, the consequence is not that a handful of questions were improper—it's that she should never have been deposed at all. *Cf. Byrd*, 674 F. Supp. 3d at 1107 ("Mr. Kelly is waiving the [legislative] privilege ***insofar as it would entitle him to not appear for a deposition at all***. He simply is not waiving more[.]" (emphasis added)). She is therefore irreparably harmed the moment the deposition occurs, whatever is asked or answered. *See McSurely v. McClellan*, 697 F.2d 309, 317 n.13 (D.C. Cir. 1982) (recognizing that compelling an official to proceed before

a ruling on an immunity defense is adjudicated "will generally constitute irreparable injury" because of "the irretrievable loss" of the protection).

*Second*, the legislative privilege prevents compelled disclosure that cannot be unwound after the fact. Indeed, once Judge Kamoutsas is forced to testify about matters that the Eleventh Circuit may conclude are privileged, no order could undo her disclosures. *See In re BayCare Med. Grp.*, 101 F.4th 1287, 1290 (11th Cir. 2024) (discussing the "importance of privileged information, the seriousness of the injury when disclosed during discovery, and the *lack of effective review after disclosure*" (emphasis added)). That is why the Eleventh Circuit treats an order of this kind as "immediately" appealable. *See Hubbard*, 803 F.3d at 1305. And that is why courts, including this one, have stayed "the entire case pending disposition of the appeal" in similar postures. *See, e.g.*, *PEN Am. Ctr., Inc.*, 2025 WL 287457, at *2–3.

The BOG will likewise suffer irreparable harm—across the entire litigation—absent a global stay. Indeed, the parties will proceed in this case guided by a privilege ruling that the Eleventh Circuit may ultimately reject. That potential harm cannot be overstated. Even by Dr. Austin's own characterization, Judge Kamoutsas is a "critical witness" who will provide "crucial testimony" and whose absence will "severely prejudice" Dr. Austin's case.[6] ECF No. 131 at 1.

---

[6] By quoting Dr. Austin, Movants do not concede that Judge Kamoutsas's testimony is as important or uniquely necessary as Dr. Austin claims. It's not. Certainly not when juxtaposed against the irreparable harm Movants face.

And Dr. Austin has plainly stated that "the regulations, policies, and practices *associated with SB 266 are the core of Plaintiff's case* challenging implementation *and* enforcement of SB 266's funding restriction." ECF No. 117-4 at 5 (emphases added); *see also id.* at 8 ("The interpretation of official GUIDANCE on the meaning of" terms "used in SB 266 or Regulation 9.016 *are directly relevant to the core claims in this case*[.]" (emphasis added)). So, taking Dr. Austin at her word, if Judge Kamoutsas's deposition and the BOG's "post-enactment" discovery are as central as Dr. Austin has represented, the case cannot be fairly resolved without proceeding through discovery under a correct ruling on privilege—which is exactly what the appeals will secure and why a global stay is necessary.

### III.  A stay will not substantially harm Dr. Austin.

A stay will not substantially harm Dr. Austin because her only potential hardship is a temporary delay in the progress of the case, which is neither substantial nor irreparable. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) (explaining that "injuries, however substantial, in terms of money, time and energy" are "not enough" to establish "irreparable harm" (quotation omitted)); *Brown v. Parramore*, No. 4:14CV193-MW/CAS, 2015 WL 3935475, at *2 (N.D. Fla. June 25, 2015) (noting "delay" does not equate to "*any* injury"). Staying the proceedings—or at a minimum staying the Orders and deposition—would actually benefit all parties. If the Eleventh Circuit agrees with Movants, then any

discovery Dr. Austin obtained would be unusable—a waste of every party's time. A stay protects Dr. Austin from that outcome as much as it protects Movants.

But staying Judge Kamoutsas's deposition only solves part of the problem. As explained, the Orders are—and continue to be—inextricably linked to each other and the rest of the litigation. *See, e.g.*, ECF Nos. 130, 133, and 135 (all building off the same reasoning). That is, the Court's initial legislative-privilege ruling is now dictating discovery, including other depositions, document production, and discovery responses. For example, Dr. Austin has noticed additional depositions—including for Commissioner Anastasios Kamoutsas and Chancellor Ray Rodrigues—that turn on the same or substantially similar privilege question that this appeal will resolve.

And, as the case is moving toward summary judgment and trial, both sides will marshal that very discovery to build the summary-judgment record, brief dispositive motions, and perhaps try the case under a privilege ruling that the Eleventh Circuit may reject—only to redo the work on remand. Both sides have the same interest in avoiding that: neither benefits from litigating the case's dispositive stages on a record that may ultimately be invalidated. Advancing the case without the Eleventh Circuit's input on the contours of the legislative privilege risks taking that testimony across several witnesses, litigating its use, and then learning on appeal that it should never have been compelled.

On the other hand, a global stay lets those stages proceed once, under a settled rule. For example, the post-appeal posture the court adopted in *PEN*

17

*American Center, Inc. v. Escambia County School Board*—a case the Orders rely on—is instructive. *See* ECF No. 130 at 3 (citing *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 787 F. Supp. 3d 1292, 1296 (N.D. Fla. 2024)); ECF No. 133 at 2–3 (citing same). In *PEN American Center*, the court stayed "the entire case pending disposition of the appeal" precisely to "avoid piecemeal litigation." *PEN Am. Ctr., Inc.*, 2025 WL 287457, at \*2. Indeed, the Eleventh Circuit's ruling will guide all of discovery at once. In turn, the rest of these proceedings can continue under a definitive rule for one time only. A global stay would therefore prevent the irreversible dismantling of the legislative privilege while also avoiding duplicative, potentially wasted proceedings and resources.

In sum, it cannot be overstated how, if Movants are correct, a short stay protects the legislative privilege and avoids irreparable and irreversible injury, with the added benefit of saving the parties' time and resources. And if they are not correct, Dr. Austin will simply pick up exactly where she finds herself today, bearing only a stay pending resolution of the Eleventh Circuit's decision. A global stay is therefore warranted because a pause to let the Eleventh Circuit resolve a threshold privilege question is minor compared to the permanent, unrecoverable loss on the other side of the ledger.

## IV. Staying these proceedings serves the public interest.

Staying these proceedings furthers the public interest for several reasons. *First*, the public interest lies in deciding whether the privilege bars this discovery before—not after—the benefits it confers (*e.g.*, being free from being deposed)

18

are violated. To start, the legislative privilege's "principal purpose is not to protect legislators, but to protect the 'legislative process itself.'" *Byrd*, 674 F. Supp. 3d at 1103 (quoting *Hubbard*, 803 F.3d at 1307–08). And by protecting the legislative process, the privilege serves the public by "shielding officials from the costs and distraction of discovery, enabling them to focus on their duties." *Id*. After all, "a court proceeding that probes legislators' subjective intent in the legislative process is a deterrent to the uninhibited discharge of their legislative duty." *Pernell*, 84 F.4th at 1345 (cleaned up). The legislative immunity is therefore "indispensably necessary as it supports the rights of the people, by enabling their representatives to execute the functions of their office." *Id.* (quoting *Tenney v. Brandhove*, 341 U.S. 367, 373–74 (1951) (cleaned up)).

*Second*, a stay conserves judicial resources. As discussed above, a deposition compelled now may prove unusable if the Eleventh Circuit upholds the privilege. That waste reaches the Court as much as the parties: it would be left to adjudicate the use of testimony that should never have been taken, and to revisit rulings the appeal may undo. Even more, a stay conserves judicial resources by "avoid[ing] piecemeal litigation," *PEN Am. Ctr., Inc.*, 2025 WL 287457, at *2, including summary-judgment briefings and potential rulings that may need to be revisited later—if not an altogether wasted trial.

*Finally*, the public has an interest in an independent, functioning, and efficient judicial branch. Compelling Judge Kamoutsas, a sitting appellate judge, to prepare for, travel to, and sit through a deposition about her former public-

service positions diverts her from her judicial duties that the public depends on her to perform. A stay defers that burden until the Eleventh Circuit decides whether the deposition may proceed at all. *Cf. In re U.S.*, 985 F.2d 510, 512–13 (11th Cir. 1993) (quashing the deposition of a public official given the "greater duties and time constraints" of public office).

### CONCLUSION

To maximally uphold the purpose and integrity of the legislative privilege, the Movants respectfully request that the Court stay all proceedings in this action pending the appeals, or at least all proceedings as to the BOG. Alternatively, the Movants respectfully request that the Court stay ECF No. 130 and ECF No. 133 pending resolution of Movants' appeals but, at a minimum, respectfully request that Judge Kamoutsas's deposition be stayed pending resolution of the appeals.

Dated: July 2, 2026

Respectfully Submitted,

By: *s/  Anthony J. Sirven*
Anthony J. Sirven (FBN: 125879)
Brian M. Trujillo (FBN: 1025734)
Carlos Haag (FBN: 1018828)
Thomas P. Bardenwerper (FBN: 1044458)
**LAWSON HUCK GONZALEZ, PLLC**
121 Alhambra Plaza, 10th Floor
Coral Gables, FL 33134
Telephone: 305-845-1000
anthony@lawsonhuckgonzalez.com
brian@lawsonhuckgonzalez.com
carlos@lawsonhuckgonzalez.com
thomas@lawsonhuckgonzalez.com

Adam Brandon (FBN: 99316)
Caroline May Poor (FBN: 101839)
**LAWSON HUCK GONZALEZ, PLLC**

101 E. College Avenue, 5th Floor
Tallahassee, FL 32301
Telephone: 850-825-4334
adam@lawsonhuckgonzalez.com
caroline@lawsonhuckgonzalez.com

*Counsel for the Florida Board of Governors of the State University System and the Honorable Rachel Kamoutsas*

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B), (C) AND RULE 26(C)(1)

The undersigned certifies that through email correspondence dated June 22, 2026, the parties conferred as to the relief requested herein and were unable to resolve this motion without the need for the Court's intervention. In the interest of avoiding piecemeal litigation, the University of Florida Board of Trustees ("UF") does not oppose the relief requested in the Motion, and if the case is stayed as to the BOG pending appeal, UF requests that the case be globally stayed pending BOG's appeal.

By: *s/  Anthony J. Sirven*
Anthony J. Sirven

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), I hereby certify that this Motion contains 4,872 words, exclusive of the case style, signature block, and certificate of service.

By: *s/  Anthony J. Sirven*
Anthony J. Sirven

21